U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JAN 30 2009

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JIMMY WAYNE ROBERSON, §
Individually, and as Executor §
of the Estate of JANA SUE §
ROBERSON, §
 §
 Plaintiff, §
 §
VS. § NO. 4:08-CV-630-A
 §
CODY ROBERSON, ET AL., §
 §
 Defendants. §

## MEMORANDUM OPINION
### and
### ORDER

Came on now for consideration the above-captioned action wherein Jimmy Wayne Roberson ("Roberson"), individually, and as executor of the estate of Jana Sue Roberson ("Jana"), is plaintiff, and Cody Roberson ("Cody"), Niki Sechrist ("Sechrist"), Weldon Wilson ("Wilson"), Tonya Phillips ("Phillips"), and Erath County, Texas ("County"), are defendants. On December 8, 2008, defendants County, Wilson, and Phillips (hereinafter, "state defendants") filed a motion to dismiss themselves as parties in the above-captioned action. Plaintiff filed a response to the motion and brief in support thereof on January 7, 2009. Having considered the motion, plaintiff's response, and the applicable authorities, the court finds that the motion to dismiss should be granted. Additionally, the court concludes that in the exercise its discretion it should dismiss the state law claims against Cody and Sechrist.

I.

Allegations of the Complaint

Plaintiff brings this action under 42 U.S.C. § 1983 and pendant state law tort claims seeking relief for the murder of Roberson's wife, Jana Sue Roberson ("Jana"), by their son Cody. The events are alleged as follows:

Cody was arrested in January 2007 for assaulting his father. Despite a policy that prohibited the release of offenders such as Cody,[1] Erath County Pretrial Services ("Pretrial Services") released Cody with conditions of release. Wilson was the manager of Pretrial Services and Phillips was the secretary for Pretrial Services.

Cody violated the terms of his release by coming around Jana's home and work, using drugs, and failing to report to the Pretrial Release Office. On January 22, 2007, Jana contacted Pretrial Services and informed them that Cody was in violation of his conditions of release. Jana was advised on the morning of January 30, 2007, that an arrest warrant was signed and issued for Cody. Phillips signed for the warrant and took possession of it at the Erath County Clerk's office that morning and then, rather than to deliver it to the Erath County Sheriff's Department ("Department"), took the warrant home with her.

---

[1] County had a policy that offenders who caused injury to an elderly person were not eligible for release. Roberson was 66 at the time of the assault and was thus considered an elderly person in the State of Texas.

2

Jana called the Department shortly before 5:00 p.m. on January 30, 2007, and told them that Cody had shown up at her work and that she was afraid of him. Jana also gave the Department information regarding Cody's location so they could arrest him. The Department assured Jana that she had nothing to worry about, that a warrant had been issued, and that the Department would pick up Cody. Based on these representations, Jana went to her house.

Meanwhile, the Department learned that Phillips had taken the warrant home with her. The Department did not attempt to pick up Cody that night because the Department had a policy of not executing warrants without having the actual warrant in hand. The Department knew that Jana could be in danger. Sheriff's deputy Jack Carr volunteered to go to Phillip's house to pick up the warrant, but he was instructed not to by his supervisor, Sergeant Jim Clifton, who told him that the warrant could wait until Monday.

At 7:00 p.m. on January 30, 2007, Cody and Sechrist came to the home of Jana and Roberson and beat Jana in the head with a baseball bat, resulting in her death.

II.

Standard of Review

The Federal Rules of Civil Procedure require that plaintiff plead "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a). In evaluating whether the complaint states a viable claim, the court

3

accepts all well-pleaded facts as true, construing the allegations of the complaint favorably to the pleader. Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007) (citations, brackets, and quotation marks omitted)). The court evaluates whether the factual allegations in the complaint are sufficient to raise a right to relief above the speculative level. Id.

III.

Analysis

A. Claims Under 42 U.S.C. § 1983

Plaintiff contends that the above-described events indicate that state defendants violated his rights under the Due Process Clause of the Fourteenth Amendment. The Due Process Clause "was intended to prevent government from abusing its power, or employing it as an instrument of oppression. . . ." DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 196 (1989) (citations, brackets, and quotation marks omitted). While the clause "forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,'. . . its language cannot fairly be extended to impose an affirmative

4

obligation on the State to ensure that those interests do not come to harm through other means." Id. at 195. The Due Process Clause does not, with 42 U.S.C. § 1983, create liability "for crimes that better policing might have prevented." Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 768 (2005).

There are few limited circumstances where the Constitution imposes affirmative duties on the State to protect certain individuals. DeShaney, 489 U.S. at 195. However, the nature of substantive due process requires courts to exercise judicial self-restraint and utmost care when examining whether a novel right is secured by the Due Process Clause. Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992). "A general obligation of the state to protect private citizens, whether broadly or narrowly conceived, effectively makes law enforcement officials constitutional guarantors of the conduct of others." Pinder v. Johnson, 54 F.3d 1169, 1178 (4th Cir. 1995). Plaintiff alleges that his rights were violated under two theories of affirmative duty under the Due Process Clause, each of which is discussed herein.

1. Special Relationship Theory

The first theory of affirmative liability, commonly referred to as the "special relationship" theory, can be summarized as follows:

> When the state, through the affirmative exercise of its powers, acts to restrain an individual's freedom to act on his own behalf through incarceration, institutionalization, or other similar restraint of personal liberty, the state creates a special relationship between the individual and

5

the state which imposes upon the state a constitutional duty to protect that individual from dangers, including, in certain circumstances, private violence.

McClendon v. City of Columbia, 305 F.3d 314, 324 (5th Cir. 2002) (quotations omitted). Plaintiff contends that this theory applies to the present action despite the fact that none of the state defendants placed Jana in any type of custody or restrained her personal liberty. The Department's assurances that Cody would be arrested do not amount to affirmatively placing Jana in custody. See Beltran v. City of El Paso, 367 F.3d 299, 307 (5th Cir. 2004) (finding no special relationship where a 911 dispatch operator encouraged the victim to stay in her bathroom and assured her that the police were on their way). Thus, plaintiff fails to allege a violation of the Due Process Clause pursuant to this theory.

### 2. State-Created Danger Theory

Plaintiff also contends that state defendants are liable under what is commonly referred to as the "state-created danger" theory of liability. Following DeShaney, the majority of federal circuits have recognized this theory.[2] The existence of the theory in the Fifth Circuit, however, remains doubtful. The Fifth Circuit adopted the state-created danger theory in McClendon v. City of Columbia, 258 F.3d 432, 436 (5th Cir. 2001), but then, following an en banc review, the ruling was vacated,

---

[2]The Court noted that even though the state knew of the dangers to the victim, "it played no part in their creation, nor did it do anything to render him any more vulnerable to them." DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 201 (1989).

and the Fifth Circuit did not recognize the theory in its opinion following rehearing, McClendon, 305 F.3d at 333. More recently, the Fifth Circuit again recognized the state-created danger theory in Breen v. Texas A&M University, 485 F.3d 325, 332-38 (5th Cir. 2007), but then voted sua sponte to grant rehearing, in part, and withdrew and deleted the portion of the opinion that recognized the theory. Breen v. Texas A&M University, 494 F.3d 516 (5th Cir. 2007).

In between McClendon and Breen, the Fifth Circuit generally declined to recognize the viability of the theory. See Longoria v. Texas, 473 F.3d 586, 593 (5th Cir. 2006) (declining to sustain a section 1983 claim predicated upon the theory because plaintiff's claims were fully subsumed by the Eighth Amendment); Rios v. City of Del Rio, Tex., 444 F.3d 417, 422-23 (5th Cir. 2006) (noting that "neither the Supreme Court nor this court has ever either adopted the state-created danger theory or sustained a recovery on the basis thereof," but also suggesting, at least arguendo, that there is no "across-the-board preclusion of application of the 'state-created danger' theory in every conceivable factual context."); Beltran, 367 F.3d at 307 (finding it unnecessary to recognize the validity of the theory because plaintiff failed to show a required element of the theory); Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 249 (5th Cir. 2003) (declining to recognize the theory but also analyzing plaintiff's claims under the theory).

Even if the state-created danger theory were viable in the Fifth Circuit, plaintiff's allegations would fail to state a valid claim. To recover under this theory:

> First, a plaintiff must show that the state actors increased the danger to [her]. Second, a plaintiff must show that the state actors acted with deliberate indifference. The key to the state-created danger cases is the state actors' culpable knowledge and conduct in affirmatively placing the individual in a position of danger, effectively stripping the person of [her] ability to defend [her]self, or cutting off potential sources of private aid.

Rivera, 349 F.3d at 249 (original brackets, citations, and quotation marks omitted). Deliberate indifference requires an actor's actual knowledge and disregard of an excessive risk to a known victim's safety. See McClendon, 305 F.3d at 326 n.8.

Plaintiff seemingly contends that state defendants violated the Due Process Clause by engaging in three actions: (1) releasing Cody on parole even though he had assaulted an elderly person, (2) assuring Jana that she had nothing to worry about and that Cody would be arrested, and (3) failing to promptly arrest Cody. For the reasons given below, none of these actions impose state-created danger liability on any of the state defendants.

First, plaintiff contends that state defendants are liable for releasing Cody on parole. That County released Cody in violation of its own policy does not create a constitutional duty. See Town of Castle Rock, 545 U.S. at 768. As state defendants point out, the County created no new danger and placed Jana in no worse position than had County not acted at all, i.e., had never arrested him in the first place. Nor are there any

factual allegations to suggest that Cody's release was the product of an intent to harm Jana or deliberate indifference to her safety.

The general assurance that Cody would be arrested did not impose a constitutional duty on state defendants to provide her with some heightened degree of protection. Plaintiff's argument is nearly identical to that made by the petitioners in DeShaney:

> [T]he State knew that [victim] faced a special danger of abuse at his father's hands, and specifically proclaimed, by word and by deed, its intention to protect him against that danger. Having actually undertaken to protect [victim] from this danger. . . the State acquired an affirmative "duty," enforceable through the Due Process Clause, to do so in a reasonably competent fashion.

489 U.S. at 197. The Supreme Court flatly rejected this argument outside of a custodial relationship, stating that "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." Id. at 200. Regardless of what Department said to Jana, she remained at all times free to act on her own behalf.

To create an affirmative duty in this context would likely result in a policy of law enforcement offices providing no information or assurances to the public, even when doing so might be preferable. The court declines to expand the concept of "affirmatively placing the individual in a position of danger" to include the conduct alleged by plaintiff. Rivera, 349 F.3d at 249. Further, plaintiff does not allege any facts to suggest

9

that any of these assurances to Jana were made with deliberate indifference.

Finally, the third action of which plaintiff complains, that Cody was not arrested soon enough because Phillips took the warrant home, is insufficient to support a claim because plaintiff had no substantive due process right for the Department to ever issue a warrant or arrest Cody, much less a right because it was not done quickly enough to avoid tragedy. See Town of Castle Rock, 545 U.S. at 768 ("the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause. . . ."); DeShaney, 489 U.S. at 196-97. That the Department made general assurances to Jana is insufficient to change the analysis.

Because the court determines that plaintiff does not allege a constitutional violation, the court need not further analyze the validity of plaintiff's section 1983 claims. See 42 U.S.C. § 1983.

B.   State Law Claims

   1.   Claims Against County

Both parties are in agreement that County is entitled to governmental immunity from plaintiff's state law claims. For all the reasons set forth in the state defendants' motion to dismiss,

the court agrees. See Defs.' Mot. to Dismiss at 16-20.    2.

### Claims Against Wilson and Phillips

County moves to dismiss plaintiff's state law claims against Wilson and Phillips on the grounds that they are entitled to derivative immunity under section 101.106(e) of the Texas Civil Practice and Remedies Code. Section 101.106(e) reads as follows:

> (e) If a suit is filed under this [Act] against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.

Tex. Civ. Prac. & Rem. Code § 101.106(e) (Vernon 2005). The decision of whether the claims against Wilson and Phillips will be dismissed pursuant to section 101.106(e) depends on whether any of plaintiff's pleaded state law claims are asserted against both County and its employees, Wilson and Phillips. County maintains that plaintiff has sued all three state defendants for recovery of damages based on the state law claims asserted in the complaint.

A plain reading of plaintiff's complaint reveals that plaintiff does assert state law claims against both County and its employees, Wilson and Phillips. Plaintiff alleges, under the headings "Negligence" and "Wrongful Death" in the section of the complaint entitled "CAUSES OF ACTION," that

> The acts of Tonya Phillips, Weldon Wilson and Erath County, Texas as described herein constitute negligence entitling Plaintiff's [sic] to their damages described herein.
>
> . . . .
>
> The negligence of Tonya Phillips, Weldon Wilson, and Erath County as described herein resulted in the death of Jana Sue

11

Roberson and the damages described herein.

Compl. at 8 ¶¶ 41, 44.

In response to County's motion, plaintiff contends that he did not bring any state law claims against County, and "to the extent that they may have been alleged, they are hereby non-suited." Pl.'s Resp. at 10. If plaintiff did not intend to seek recovery from County for his tort claims, he most certainly failed to pay heed to the admonishment of the Texas Supreme Court that:

> Because the decision regarding whom to sue has irrevocable consequences, a plaintiff must proceed cautiously before filing suit and carefully consider whether to seek relief from the governmental unit or from the employee individually.

Mission Consol. Indep. Sch. Dist. v. Garcia, 252 S.W.3d 653, 657 (Tex. 2008). The court views the disclaimer plaintiff makes in his response to the motion of any intent to seek recovery from County on his state law claims to be but an indirect attempt to amend his complaint to cause it to be reworded in such a way that recovery for the state law claims is sought only from Wilson and Phillips. As the above-quoted language from Garcia suggests, once the claim has been made for recovery from both the governmental unit and the employee, section 101.106(e) becomes irrevocably applicable. In other words, an amendment to plaintiff's pleading eliminating the governmental entity from the state law tort claim will not solve the plaintiff's problem. See Brown v. Xie, 260 S.W.3d 118, 122 (Tex.App.--Houston [1st Dist.] 2008, no pet.); see also Singleton v. Casteel, 267 S.W.3d 547,

552 n.6 (Tex. App.--Houston [14th Dist.] 2008, pet. filed).

Thus, the court concludes that plaintiff's state law claims against Wilson and Phillips should be dismissed pursuant to section 101.106(e).

### 3. Plaintiff's Claims Against Cody and Sechrist

Because the court finds that all federal claims should be dismissed, the court concludes that dismissal of plaintiff's claims against Cody and Sechrist also is appropriate. Federal courts are to "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). When federal claims are dismissed before trial and only state law claims remain, the general rule in the Fifth Circuit is to dismiss the pendent state law claims. Parker & Parsley Petroleum Co. v. Dresser Indus., 972 F.2d 580, 585 (5th Cir. 1992). Because all federal claims in this action are being dismissed before trial, the factors of judicial economy, convenience, fairness, and comity suggest that the court should decline to continue to exercise jurisdiction over the state law claims against Cody and Sechrist.

IV.

## Plaintiff's Request for Leave to Amend

Plaintiff, in the alternative, requests leave to amend his complaint "for the purpose of clarifying the issues of deliberate indifference, training, state law claims against Wilson and Phillips, and supervision." Pl.'s Resp. at 10. Plaintiff provides nothing to suggest that an amended complaint would contain anything more than formulaic recitations of the elements described in his request. Further, it is clear from the facts alleged that the events that Roberson and Jana suffered, while tragic, did not amount to a violation of the Due Process Clause. Consequently, granting the motion would be a futile delay of this action's inevitable dismissal.

V.

## Order

For the reasons discussed above, the court concludes that state defendants' motion to dismiss all claims and causes of actions against state defendants should be granted, and that the court should decline to exercise subject matter jurisdiction over the remaining claims and causes of action against Cody and Sechrist.

Therefore,

The court ORDERS that plaintiff's request to amend the complaint be, and is hereby, denied.

The court further ORDERS that state defendants' motion to dismiss be, and is hereby granted, and that plaintiff's claims

14

and causes of action against state defendants be, and are hereby dismissed for failure to state a claim upon which relief may be granted.

The court further ORDERS that plaintiff's claims and causes of action against Cody and Sechrist be, and are hereby, dismissed without prejudice to him pursuing them in an appropriate state court.

SIGNED January 30, 2009.

JOHN McBRYDE
United States District Judge